# 2009 DTA 121

## TRIBUNAL DE APELACIONES
## REGIÓN JUDICIAL DE BAYAMÓN-CAROLINA
## PANEL V

HÉCTOR HOYOS ALIFF
Demandante-Recurrido

v.

MARÍA E. LÓPEZ ALMAGUER
Demandada-Peticionaria

Núm. KLCE-2009-00302

San Juan, Puerto Rico, a 21 de agosto de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
la Juez Fraticelli Torres y el Juez Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La señora María Elena López Almaguer presentó un recurso de *certiorari* mediante el cual nos solicita que revoquemos una resolución del Tribunal de Primera Instancia, que acreditó una porción de unos ingresos gananciales al pago de una pensión alimentaria provisional. El monto de la pensión en controversia se refiere a una deuda acumulada durante 13 meses entre los años 2004 a 2005.

Por entender que no existen fundamentos para expedir el auto solicitado, se deniega el mismo.

### I

El señor Héctor Hoyos Aliff y la señora López contrajeron matrimonio en 1984. Durante los 20 años que duró su matrimonio, procrearon tres hijos. El señor Hoyos presentó una demanda de divorcio por la causal de ruptura irreparable en el Tribunal de Primera Instancia, el 20 de agosto de 2004.

A raíz de la petición de divorcio, la Examinadora de Pensiones Alimentarias asignada al caso le recomendó al tribunal que fijara una pensión alimentaria provisional de $17,389.65 mensuales a favor de los hijos menores de la pareja. Este dinero debía ser depositado en la cuenta bancaria de la señora López. El Tribunal de Primera Instancia adoptó dicha recomendación y, además, le ordenó al señor Hoyos que le proveyera a los menores un seguro médico y otros seguros.

El señor Hoyos presentó una moción mediante la cual le solicitó al tribunal que reconsiderara la sentencia en la cual estableció la pensión alimentaria provisional. Entre otras cosas, impugnó las recomendaciones de la Examinadora de Pensiones Alimentarias, ya que ésta le adjudicó al señor Hoyos la totalidad de los gastos de los menores y no se tomó en consideración que luego de la ruptura del matrimonio, cada padre debía aportar a la pensión alimentaria de los hijos, en cantidad proporcional a su caudal.

La señora López presentó una Oposición a la *Reconsideración y Solicitud de Desacato*. Alegó que la pensión se fijó luego de que el señor Hoyos aceptara capacidad económica de pago y luego de considerar las necesidades económicas de los hijos menores.

En diciembre 2004, la señora López solicitó que se encontrara al señor Hoyos incurso en desacato por no satisfacer la pensión provisional de alimentos ordenada por el tribunal. Ésta fue la primera de ocho mociones de igual naturaleza, presentadas por la señora López durante el transcurso del caso. La última fue presentada el 9 de abril de 2008.

El tribunal refirió la moción de reconsideración y su oposición a la Examinadora de Pensiones Alimentarias para que emitiera sus comentarios y observaciones.

La señora López presentó su contestación enmendada a la demanda y una reconvención el 16 de febrero de 2005. En su reconvención alegó que el señor Hoyos estaba despilfarrando los bienes de la sociedad de bienes gananciales compuesta por ambos y que la señora López fue víctima de maltrato verbal y de obra por parte del señor Hoyos en las últimas etapas de su matrimonio.

Luego de recibir las recomendaciones de la Examinadora de Pensiones Alimentarias, el tribunal declaró no ha lugar a la reconsideración. Decidió que, luego de aceptar su capacidad económica, el señor Hoyos no podía impugnar la pensión establecida conforme a las necesidades razonables de los alimentistas.

Posteriormente, el señor Hoyos presentó una moción en el tribunal mediante la cual solicitó la revisión de la pensión alimentaria provisional. Alegó el señor Hoyos que le había transferido a la señora López unas inversiones con valor de $3,022,885.47, las cuales producían ingresos mensuales de $14,563.25 y eran administradas en su totalidad por la señora López. Se argumentó que esto constituía un cambio sustancial en las circunstancias de la señora López, por lo que la pensión alimentaria debía ser revisada.

Posteriormente, la señora López le solicitó al tribunal que emitiera una orden urgente para que el señor Hoyos pagara el colegio de uno de los menores. Alegó que, a pesar de que el señor Hoyos había estado aportado a ciertos gastos, no estaba cumpliendo con el pago de la pensión provisional impuesta por el tribunal y había expresado que no iba a pagar el colegio. Como resultado, el tribunal le otorgó al señor Hoyos diez (10) días para ponerse al día con el pago de su pensión. Además, se le advirtió al señor Hoyos que el hecho de que la pensión alimentaria estaba en revisión no era excusa para no cumplir con el pago. Se expresó en la resolución que cualquier cambio que sufriera la pensión tendría efecto prospectivo.

El matrimonio quedó disuelto por la causal de trato cruel mediante sentencia dictada el 4 de octubre de 2005. Para ese momento, la hija de las partes se había emancipado. El tribunal determinó que la patria potestad de los dos hijos menores de edad sería compartida entre sus padres, pero se le otorgó la custodia física a la señora López.

Por otro lado, el Tribunal Primera Instancia emitió una resolución el 17 de noviembre de 2005, mediante la cual acogió el acuerdo entre las partes a los efectos de que el señor Hoyos pagaría $4,375 quincenales por concepto de pensión alimentaria. El tribunal también estableció que existía una deuda de pensión alimentaria que debía ser calculada por las partes hasta el 31 de octubre de 2005. También se reconoce en la resolución que las partes habían estipulado el hecho de que la señora López poseía y controlaba unas inversiones que ascendían a $2,973,745 y generaban intereses mensuales de $14,382.36.

La señora López presentó una moción en la cual solicitó que se estableciera el término que tenía el señor Hoyos para presentar evidencia de pagos a la pensión provisional. También le solicitó al tribunal que concluyera que la pensión provisional estipulada por el tribunal hasta ese momento no se había pagado y que,

luego- de darle la oportunidad al señor Hoyos para presentar evidencia de las cantidades pagadas, le ordenara pagar lo que aún faltaba. El Tribunal de Primera Instancia le otorgó al señor Hoyos quince días para someter evidencia de los pagos que se debían acreditar a la pensión provisional.

La señora López presentó otra moción en la cual solicitó que se encontrara al señor Hoyos incurso en desacato por no pagar ni presentar evidencia de pago de la pensión provisional, el 5 de septiembre de 2007. Se incluyó con la moción un informe preparado por el perito de López, Eduardo R. Jiménez Viñas, quien era Contador Público Autorizado (C.P.A.). En el informe se desglosaba la deuda de Hoyos por concepto de pensión alimentaria de sus hijos.

Luego de varios trámites procesales, el 29 de mayo de 2008, el Tribunal de Primera Instancia nombró al C. P.A. Jesús Otero Marrero como perito del Tribunal. El perito del tribunal tenía la encomienda de recibir la evidencia de todos los pagos realizados por el señor Hoyos durante el período en controversia, a saber, los trece meses transcurridos entre el 1 de octubre de 2004 y el 31 de octubre de 2005. El informe del perito del tribunal debía contener un análisis de si el alimentante tenía una deuda o un crédito por el pago de la pensión. El Juez resolvería la controversia en cuanto a si debían considerarse pagos a la pensión. El Juez de Instancia recordó que, debido a que la pensión alimentaria provisional para ese período se había fijado en $17,389.65 mensuales, al 31 de octubre de 2005 se acumularon pagos por concepto de pensión alimentaria por $226,065.45.

El perito del tribunal presentó su Informe, el 17 de octubre de 2008. Concluyó que el señor Hoyos había pagado $65,033.98 de los $226,065.45 de pensión provisional para el período en cuestión, por lo que tenía una deuda de $161,031.47. El Juez de Instancia, por su parte, le otorgó diez días a las partes para mostrar causa por la cual no debía adoptar el informe del perito del tribunal.

La señora López y el señor Hoyos se allanaron a la deuda por concepto de pensión alimentaria determinado en el informe del perito. De manera que las partes estuvieron de acuerdo en que el monto de la pensión adeudada por el señor Hoyos ascendía a $161,031.47.

La controversia del presente caso se relaciona con el reclamo del señor Hoyos a que se reconociera un crédito y se tomara en consideración el hecho de que la señora López recibía el producto de una inversión ganancial de $2,973,745, la cual generaba un beneficio mensual de $14,382.36. Solicitó el señor Hoyos que se acreditara al pago adeudado de la pensión la mitad del pago mensual que ella recibía producto de bienes gananciales. El señor Hoyos computó que durante el período entre el 1 de octubre de 2004 y el 31 de octubre de 2005, la inversión había generado $690,353, por lo cual cada cónyuge tenía derecho a $345,176.44. Además, autorizó a que se le restaran los $161,031.47 adeudados por pensión a su mitad de los ingresos de la inversión y que la cantidad restante fuera acreditada a su mitad de los bienes gananciales. Alegó que la no acreditación de esa cantidad para la pensión alimentaria constituía enriquecimiento injusto, pues la señora López se había beneficiado exclusivamente de esos bienes desde el 2004.

La señora López replicó la moción y alegó que la transferencia de las inversiones a su nombre se hizo posterior a la fijación de la pensión provisional y como parte de la división parcial de bienes gananciales, debido a que ella había solicitado una pensión *pendente lite*. También adujo que las inversiones no generaban la cantidad que alega el señor Hoyos. Además, alegó que los réditos de las inversiones en cuestión fueron tomados en consideración por la Examinadora de Pensiones y el Tribunal de Primera Instancia cuando se redujo la pensión alimentaria de $17,389.65 a $8,750. Argumentó, finalmente, que los asuntos de bienes gananciales debían discutirse en el pleito de división de gananciales y no en este procedimiento.

El Tribunal de Primera Instancia emitió resolución, el 2 de febrero de 2009, en el cual concluyó que la deuda por pensión alimentaria ascendía a $161,031.47. No obstante, en cuanto al crédito solicitado determinó lo siguiente:

"la promovente no estuvo desprovista de sustento durante este término reclamado de trece meses, ya que recibió aportaciones económicas del promovido. Por tal razón, se le concede el crédito de $161,031.47 de pensión alimentaria a la promovente, Sra. María E. López, con cargos a la partición de bienes gananciales." Véase, Resolución del Tribunal de Primera Instancia del 2 de febrero de 2009, Apéndice del *Certiorari*, pág. 3.

La señora López presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Alegó que el Tribunal de Primera Instancia erró al conceder la pensión alimentaria como un crédito con cargos a la partición ganancial por determinar que la señora López no estuvo desprovista de sustento durante el período comprendido entre el 1 de octubre de 2004 y el 31 de octubre de 2005, en virtud de las aportaciones económicas del señor Hoyos. También le imputó al Tribunal de Primera Instancia errar al no imponer intereses de abogado e intereses por mora al señor Hoyos.

El señor López presentó oportunamente su oposición al recurso. Contando con la comparecencia de las partes, procedemos a resolver.

## II

Para solucionar la controversia planteada, debemos examinar varios principios de derecho.

### 1. Las pensiones alimentarias

El Artículo 118 del Código Civil de Puerto Rico (Código Civil), establece que los hijos tienen derecho a recibir alimentos de sus padres. 31 L.P.R.A. sec. 466. Los alimentos, según definidos en el Artículo 142 del Código Civil, son todas las cosas que sean indispensables para el sustento, habitación, vestido y asistencia médica del alimentante, según la posición social del alimentista. El artículo también establece que los alimentos incluyen "la educación e instrucción del alimentista, cuando es menor de edad". 31 L.P.R.A. sec. 561. Este derecho se extiende a los estudios de bachillerato, cuando el hijo ha comenzado a estudiar cuando es menor de edad, y los estudios postgraduados, en situaciones que deben ser estudiadas caso a caso. *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261, 266-267 (1985).

El Artículo 143 del Código Civil establece la obligación de alimentar a ciertos parientes que tengan la necesidad de recibir alimentos, siempre que el alimentante cuente con los recursos para proveerlos. 31 L.P.R.A. sec. 562. Véase, también, *Guadalupe Viera v. Morell*, 115 D.P.R. 4, 13 (1983). El Artículo 146 del Código Civil dispone que la cuantía de estos alimentos debe ser proporcionada a los recursos del que los da y a la necesidad del que los recibe. La cuantía cambiará a medida en que estos elementos aumenten o se reduzcan. 31 L.P.R.A. sec. 565. Por lo tanto, la determinación de la pensión debe descansar en dos elementos, a saber:

"(i) los recursos y medios de fortuna del alimentante, de forma tal que se pueda determinar su capacidad económica para cumplir con su obligación alimentaria, y

(ii) las necesidades del alimentista, es decir, cuánto necesita éste para cubrir sus necesidades de sustento, habitación, vestido, asistencia médica y educación, conforme a su posición social." *Martínez v. Rodríguez*, 160 D.P.R. 145, 153 (2006).

Esta modalidad de obligación alimentaria se basa en la necesidad económica del hijo, depende de la condición económica del alimentante y es exigible cuando se demuestra la necesidad y se reclama judicialmente. Artículo 147 del Código Civil, 31 L.P.R.A. sec. 566. Véase también, *Guadalupe Viera v. Morell*, *supra*, pág. 13. La necesidad de los hijos no requiere que éstos estén en completa indigencia, sino que basta con que refleje necesidad en relación con sus condiciones personales y sociales. *Guadalupe Viera v. Morell*, *supra*, págs. 14-15. En fin, esta pensión alimentaria debe estar fundamentada en las necesidades de los hijos, a la luz de las circunstancias del caso, lo cual incluye específicamente el estilo de vida de los padres. *Ferrer v. González*,

162 D.P.R. 172, 180 (2004).

Por otro lado, el Artículo 153 del Código Civil establece que el padre y la madre tienen la obligación de proveer alimentos a sus hijos no emancipados. 31 L.P.R.A. sec. 601. La obligación alimentaria que surge del Artículo 153 del Código Civil emana del ejercicio de la patria potestad. *Guadalupe Viera v. Morell, supra*, pág. 12.

El deber de alimentación que surge de la patria potestad no depende del estado de necesidad del hijo, sino que se basa en el hecho de la generación. Incluso, el menor puede tener bienes suficientes para su sostenimiento y tener derecho a recibir alimentos de sus padres con patria potestad. *Guadalupe Viera v. Morell, supra*, pág. 13. La obligación de los padres de alimentar a sus hijos menores de edad se reconoce como parte del derecho constitucional a la vida. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Véase, *Ríos v. Narváez*, 163 D.P.R. 611, 617 (2004). Además, el derecho de alimentos de los menores de edad y los casos de alimentos está revestido del más alto interés público. *Ríos v. Narváez, supra*, pág. 618; *Ferrer v. González, supra*, pág. 177.

La obligación de los padres surge de la relación paterno-filial, la cual se origina en el momento en que la paternidad o maternidad ha quedado establecida legalmente. *Martínez v. Rodríguez, supra*, pág. 151. Por lo tanto, el padre y la madre legalmente establecidos están obligados a proveer alimentos a sus hijos menores, independientemente de si tienen la patria potestad o vivan con ellos. *Chévere v. Levis*, 150 D.P.R. 525, 539 (2000). Esta obligación se diferencia del resto de las obligaciones porque se trata de un deber legal entre el alimentista y el alimentante, en virtud del vínculo parental personalísimo que los une y en la cual la prestación debida es vital para el acreedor. *Maldonado v. Cruz*, 161 D.P.R. 1, 13 (2004).

La obligación de brindar los alimentos recae en ambos padres cuando éstos están casados, pero si se rompe el vínculo matrimonial, la obligación se reparte entre los padres en cantidad proporcionada a su caudal respectivo. Artículo 145 del Código Civil, 31 L.P.R.A. sec. 564; *Figueroa Robledo v. Rivera Rosa*, 149 D.P.R. 565, 572 (1999). Pero la labor del cónyuge que destina la pensión a todo lo indispensable para el sustento, habitación, vestido y asistencia médica de los hijos, debe considerarse como el descargo de su obligación personal de alimentar. *Figueroa Robledo v. Rivera Rosa, supra*, pág. 572.

Los alimentos debidos a los hijos mientras está vigente el matrimonio son obligaciones gananciales. Luego de decretado el divorcio, el crédito no se puede imputar a la masa ganancial, sino al peculio personal del padre alimentante, ya que se convierte la obligación en una personal, a no ser que ese padre se case nuevamente, en cuyo caso la obligación se le podrá imputar a la nueva sociedad de gananciales que se haya constituido. *Maldonado v. Cruz, supra*, págs. 14-15; *Figueroa Robledo v. Rivera Rosa, supra*, pág. 578.

Cuando uno de los padres alimentantes paga en exceso de lo que le corresponde pagar, se le debe reconocer un crédito por la parte que le correspondía pagar al otro ex cónyuge alimentante al momento de liquidar los bienes gananciales. *Figueroa Robledo v. Rivera Rosa, supra*, pág. 573. El padre alimentante también genera un crédito a su favor cuando paga en exceso de lo que le corresponde. *Figueroa Robledo v. Rivera Rosa, supra*, pág. 573.

Se ha establecido que el alimentante no puede escoger, a su propio arbitrio, la manera como se ha de distribuir entre sus hijos la pensión impuesta o la manera de satisfacerla. *Guadalupe Viera v. Morell, supra*, pág. 15.

La finalidad de las pensiones alimentarias es el bienestar del alimentista, no la penalización del alimentante. *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616, 629 (1986).

El desacato, por tener naturaleza reparadora y por tratarse de la privación de la libertad del alimentante, se

· debe usar con prudencia y se debe limitar a los casos en que hay una desobediencia obstinada y voluntaria a una orden de pensión de alimentos y los casos en que el encarcelamiento del alimentante le pueden brindar al alimentista la reparación necesaria. *Rodríguez Avilés v. Rodríguez Beruff, supra,* pág. 627. A estos efectos, el Tribunal Supremo ha expresado lo siguiente:

· "[C]uando la reclamación de alimentos se refiere a deudas remotas, como en el caso de autos, y se comprueba a satisfacción del tribunal que el padre alimentante al presente está cumpliendo con su obligación alimenticia y que no existe necesidad inmediata del menor que se deba atender con la deuda que se reclama, el juez deberá aprobar un plan de pago que le permita al deudor ponerse al día sin necesidad de advenir a la ruina económica. El tribunal deberá diseñar un plan que sea económicamente viable para el alimentante y que satisfaga las necesidades del menor. El criterio rector en estos casos es su razonabilidad.

En casos como éste, donde las deudas reclamadas son remotas y no se ha demostrado una necesidad inmediata del menor que requiera el pago de la deuda en su totalidad, sólo si el padre alimentante se niega voluntaria y obstinadamente a cumplir con el plan de pago aprobado, procede que se le declare incurso en desacato." (Citas omitidas). *Rodríguez Avilés v. Rodríguez Beruff, supra,* pág. 628.

## 2. La equidad

El Artículo 7 del Código Civil establece que cuando no haya ley aplicable al caso, el tribunal puede resolver conforme a equidad, lo cual significa que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, los usos, y las costumbres aceptados y establecidos. 31 L.P.R.A. sec. 7.

Se ha establecido que la función de la jurisprudencia es interpretar y aplicar la ley a casos concretos, llenar las lagunas cuando las haya y armonizar las disposiciones de ley que estén o parezcan estar en conflicto. *Carattinni v. Collazo Syst. Análisis, Inc.,* 158 D.P.R. 345, 360 (2003). Se usa la equidad en nuestro ordenamiento para dar lugar a excepciones y permitir atemperar la rigurosidad de las normas cuando a causa de la aplicación de una norma en sus términos absolutos se produce una injusticia en una situación en particular. *BPPR v. Sucn. Talavera,* **2008 J.T.S. 152**, 174 D.P.R. ___ (2008).

La equidad surgió por la necesidad de atemperar el rigor de la norma jurídica mediante recurso a la conciencia del juzgador. *CMI Hospital v. Depto. Salud,* **2007 J.T.S. 105**, 171 D.P.R. ___ (2007); *Rodríguez v. Pérez,* 161 D.P.R. 637, 651 (2004).

## III

La resolución dictada por el Juez de Instancia constituye una medida en equidad según las circunstancias específicas del presente caso. Por lo tanto, no erró al adjudicar en la particular situación de hechos que la porción ganancial que le correspondía al señor Hoyos generada por los ingresos mensuales de las inversiones que controlaba la señora López podía considerarse como un crédito por la pensión provisional que adeudaba.

Los hijos menores del señor Hoyos y la señora López tienen derecho a recibir alimentos por parte de sus padres. Como hemos visto, esta obligación persiste aunque los padres estén separados o divorciados. Es por esta razón que tan pronto los padres se separaron y mientras se establecía la pensión alimentaria permanente a favor de los hijos, el tribunal instituyó una pensión provisional.

Surgió una controversia en cuanto al pago de la pensión provisional en el período de 1 de octubre de 2004 al 31 de octubre de 2005. Para aclarar dicha controversia, el Tribunal de Primera Instancia nombró un perito, quien determinó que el señor Hoyos adeudaba $161,031.47 de la pensión provisional. Ambas partes se allanaron a la cantidad determinada por el perito del tribunal.

Sin embargo, según las alegaciones del señor Hoyos, desde el 9 de diciembre de 2004, la señora López controla unas inversiones que tienen carácter ganancial y ascienden a la suma de $2,973,745.40. El bien ganancial genera $14,382.36 mensuales, que recibe la señora López. La mensualidad generada por las inversiones la disfrutaba la señora López únicamente, a pesar de que las inversiones eran gananciales. Además, el tribunal determinó en su sentencia que durante el período en cuestión, el señor Hoyos contribuyó con el pago de matrícula y realizó pagos mensuales mediante el retiro de dinero efectivo (ATH) para sus hijos, pagó el automóvil de uno de ellos y contribuyó con dinero para los gastos del hogar. No estamos, como dijo el Tribunal de Primera Instancia, en una situación en que la señora López ni los hijos menores de las partes estuvieron desprovistos de sustento ni dinero para satisfacer sus necesidades durante el período en controversia.

Al tratarse de inversiones gananciales, ambos, el señor Hoyos y la señora López, tienen derecho a la mitad de los ingresos generados por las inversiones y todos los bienes gananciales. Luego de considerar las circunstancias especiales y particulares de este caso, el Tribunal de Primera Instancia concedió un crédito de pensión alimentaria a la señora López, con cargos a la partición de bienes gananciales. Esto quiere decir que la mitad de los ingresos generados por las inversiones controladas por la señora López que le correspondían al señor Hoyos, se acreditaron a la cantidad de dinero que él adeuda por pensión provisional. Se permitió que el señor Hoyos cumpliera con su deuda por la pensión provisional mediante la acreditación de una porción de los ingresos que debió haber recibido de las inversiones bajo el control de la señora López.

No procedía declarar *con lugar* la orden de desacato solicitada por la señora López. No se trataba en este caso de una parte que incumplió obstinada y voluntariamente con su obligación. El encarcelamiento del señor Hoyos no le hubiese brindado a sus hijos la reparación que necesitaban.

La corrección de la sentencia en este caso depende de sus hechos particulares. No todos los casos de pensiones alimentarias son iguales. Entendemos que la medida tomada por el Juez de Instancia es una medida en equidad en atención a las circunstancias especiales que componen el caso y el dinero que recibió la señora López mientras reclamaba la deuda por la pensión alimentaria. La realidad es que mediante los ingresos que recibió la señora López, de los cuales la mitad pertenecían al señor Hoyos, y la asistencia económica de éste para ciertas necesidades de sus hijos, los menores suplieron sus necesidades.

Por otro lado, debido a la naturaleza de los hechos del caso y la medida que finalmente se tomó, actuó correctamente el Juez de Instancia al denegar los honorarios de abogado y los intereses por mora sobre pensión provisional solicitados por la señora López.

**IV**

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones